IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BYRON CHRISTMAS, et al., )
       Plaintiffs, )  No. 08 CV 4675
v. )  Judge Blanche M. Manning
)
CITY OF CHICAGO, et al., )
       Defendants. )

**MEMORANDUM AND ORDER**

Plaintiffs Byron Christmas, Tiffany Banks, and their daughter Naomi Christmas, sued the City of Chicago and several of its police officers alleging numerous federal and state law claims, including that their civil rights were violated during an illegal search, false arrest, and when officers left newborn-Naomi behind at the scene of the arrests. Jurors found in favor of the defendants. The plaintiffs now seek a new trial under Federal Rule of Civil Procedure 59, arguing that they were denied a fair trial by the defendants' alleged violations of this court's evidentiary rulings, coupled with allegedly improper remarks by defense counsel.

Under Federal Rule of Civil Procedure 59(a), a new trial may be granted where (1) a verdict is against the weight of the evidence, (2) damages are excessive, or (3) other reasons made the trial unfair to the moving party. *See Pickett v. Sheridan Health Care Center*, 610 F.3d 434, 440 (7th Cir. 2010).

The plaintiffs contend that multiple reasons made their trial unfair. The court will address several of those reasons together as they involve allegations that defense counsel and/or the defendants referred to evidence excluded by the court in order to portray Byron Christmas as a drug dealer.

*References to Drug Dealing*

  *A. Sidebar Discussion*

First, the plaintiffs contend that they were denied a fair trial during a sidebar when, in a voice loud enough to be heard by jurors, defense counsel told the court that an anonymous 911 caller was scared to death of Byron Christmas, adding "thank the Lord that she is not in this courtroom." Plaintiffs' counsel asserts that their own clients heard the comments and, therefore, jurors must have also heard the comments as the jury box is next to where the plaintiffs sat. However, during this trial the court adhered to its practice of switching the courtroom's sound system over to white noise during sidebar discussions. The court's jury box is filled with 4 speakers aimed directly at jurors and, when white noise is played over those speakers, jurors cannot hear sidebar discussions even they can be heard by others in the courtroom. The court specifically recalls that sidebar discussion at issue and the plaintiffs' contemporaneous objection to the volume of defense counsel's voice. The court was satisfied then, and remains satisfied

now, that defense counsel's statements were not so loud that jurors could have heard them over the white noise that filled the jury box, even if others outside the box heard counsel's statements.

Accordingly, counsel's statements at sidebar are not a basis for a new trial.

### B.     *Officer Loaiza's Testimony*

Next, the plaintiffs contend that they received an unfair trial when defendant officer Luis Loaiza described the assignment he received from dispatch the day of the arrest of Christmas and Banks.  Outside the presence of the jury, the court ruled that Officer Loaiza could testify that on August 27, 2007, he had received a call from dispatch to look for a 500-pound man selling drugs out of a gold Dodge Intrepid.  He was further allowed to testify that the previous day he had received calls from dispatch about reports of drug activity in the same area, but could not testify that those calls had described a 500-pound man.  Nevertheless, Loaiza testified both that on the 27th he received a dispatch call about a 500-pound drug dealer, and that the description of the suspect that he had received on the 27th was the same as the description of the suspect he had received on previous occasions.

The plaintiffs contend that Loaiza's testimony about earlier reports of a 500-pound man selling drugs denied them a fair trial because it contributed to creating the perception that Christmas was a drug dealer.  However, plaintiffs' counsel did not object at the time to Loaiza's testimony.  Instead, they waited until after Loaiza's direct examination to first raise the issue with the court.  As the court explained at that time:

> | The Court: | I didn't hear an objection. |
> |---|---|
> | Mr. Johnson: | Well, if we would have objected, it would look like— |
> | The Court: | That's what objections are for, counsel, if something improper is— |
> | . . . | |
> | Mr. Green: | Just for the record, I thought we followed your ruling, but— |
> | The Court: | Not quite.  But I didn't hear an objection, so—I don't think it's for me to interject an objection.  I—it could be a tactic, you understand, so I didn't know. |

Trial Transcript (attached as Exhibit A to Motion [#120]) at 1052-53.  A timely objection would have afforded the court the opportunity to strike Loaiza's improper comment.  Even when counsel finally did raise the issue of Loaiza's testimony, counsel did not do so as an objection but, rather, as a request to admonish the witnesses to adhere to the court's evidentiary rulings.

The court is not persuaded that the plaintiffs are entitled to a new trial on the basis of Loaiza's testimony, given that any harm that resulted from his testimony could have been ameliorated by a timely objection.

### C. 911 Call Center Witness

The plaintiffs also seek a new trial based upon the fact that an employee of Chicago's 911 call center took the stand and answered preliminary questions about how 911 calls are logged. Shortly after her testimony began, the plaintiffs objected to the witness' testimony on the ground that the defendants were attempting to lay a foundation for 911 calls that the court had excluded. After hearing from the parties at sidebar, the court sustained the plaintiffs' objection and excused the witness.

The plaintiffs contend that they were denied a fair trial because the 911 call center employee's appearance on the stand may have left jurors with the impression that relevant 911 calls were being withheld from them, and that the calls must have been harmful to the plaintiffs' case.

The court excused the witness before she got into any substantive discussion about specific calls into the 911 center. In the absence of any testimony about specific 911 calls, there is no basis for concluding that her brief appearance on the stand had the type of "substantial influence over the jury" that would require a new trial. *Romanelli v. Suliene*, No. 08-1762, 2010 WL 3155926, at *7 (7th Cir. Aug. 11, 2010) (internal citation and quotation marks omitted).

### D. Officer Rendon's Testimony

Next, the plaintiffs contend that they are entitled to a new trial because defendant officer Arnoldo Rendon volunteered testimony that after Christmas' arrest, a dispatcher told Rendon about a call to the 911 center that officers "had the right guy." The court had previously excluded evidence about the "had the right guy" dispatch because it was not relevant to the false arrest claim, and there was no evidence that any of the defendants to the plaintiffs' malicious prosecution claim ever heard the dispatch (the plaintiffs dropped the malicious prosecution claim against Rendon). *See* February 26, 2010, Minute Order [#104].

The plaintiffs contend that Rendon's testimony about the dispatch "poison[ed] the jury's perception of Mr. Christmas" by portraying him as guilty of a drug offense. Motion [#120] at 18. However, the plaintiffs immediately objected. The court sustained the objection and told jurors the following:

> The last question and answer is to be totally disregarded. It will be stricken from the record . . .

Trial Transcript (attached as Exhibit A to Response [#130]) at 1113. The court presumes that jurors follow the instructions given to them. *See Pickett v. Sheridan Health Care Ctr.*, 610 F.3d

434, 446 (7th Cir. 2010). Accordingly, because the statement was stricken and jurors were instructed to disregard it, Rendon's statement does not provide the plaintiffs with a basis for a new trial.

### E. Cumulative Effect

Alternatively, the plaintiffs argue that even if the allegedly improper evidence of 911 calls and suggestions that Christmas was dealing drugs do not individually warrant a new trial, their cumulative effect warrants a new trial. In support, the plaintiffs cite *Llaguno v. Mingey*, 763 F.2d 1560 (7th Cir. 1985), for the proposition that courts must carefully guard against "trial errors that consistently favor the defendants" in § 1983 cases. *Id.* at 1570. However, the plaintiffs seek a new trial based not on trial errors that favored the defendants but, rather, the defendants' allegedly repeated defiance of the court's evidentiary rulings.

Nevertheless, the court has carefully assessed the potential cumulative effect of the defendants' conduct and concludes that, even in the aggregate, the defendants' references to excluded evidence does not warrant a new trial. The references to evidence that officers were looking for a drug dealer matching Christmas' description must be balanced against the fact that jurors were also told Christmas and Banks stood trial on drug charges stemming from the incident at issue in this case and were acquitted. Given that jurors knew of the acquittal, the court cannot conclude that the defendants' references to excluded evidence that Christmas was a suspected drug dealer may have had "a substantial influence over the jury" that would require a new trial. *Romanelli*, 2010 WL 3155926, at *7.

## Improper Statements By Defense Counsel

Next, the plaintiffs argue that they are entitled to a new trial because of improper statements made by one of the defendants' attorneys throughout the trial, including closing arguments. Specifically, the plaintiffs identify the following as improper statements by defense counsel:

- counsel "repeatedly and distractingly inserted herself into the trial" by talking about herself and by becoming "choked up" while questioning an officer about accusations that the officer played a role in the vaginal and anal cavity searches of the plaintiffs;

- counsel asked plaintiff Tiffany Banks how she came to hire plaintiffs' counsel;

- during closing argument, counsel "intimated" that the plaintiffs had been brutalized in the past;

> counsel "vouched" for her clients by arguing that the only victims of an intentional infliction of emotional distress were her clients, not the plaintiffs;

> counsel repeatedly referred to criminal law concepts, including the need to prove a defendant "guilty," when describing the plaintiffs' burden of proof;

> during closing argument, counsel made the following observation about plaintiffs' counsel: "They didn't even ask these officers: Did you or did you not do this? Why? They don't believe it themselves." Trial Transcript (attached as Exhibit A to Motion [#120]) at 1319.

The court vividly recalls defense counsel's performance both during the presentation of evidence and during closing arguments. While counsel's advocacy at times was energetic, plaintiffs' counsel succeeded in keeping it from becoming overly zealous through effective objections, which the court sustained. Additionally, the court instructed jurors that statements by attorneys were not evidence, which provided another layer of protection against any undue influence caused by defense counsel's personalizations.[1] The court finds in its discretion that the vast majority of comments that are the subject of the plaintiffs' motion are simply not so irregular as to warrant a new trial, especially given that most of the comments came during closing arguments. *See Gassman v. Frischholz*, No. 05 CV 5377, 2007 WL 1266291, at *3 (N.D. Ill., Apr. 30, 2007) ("A movant must leap a high hurdle to obtain a new trial based upon comments made during closing arguments.") (citing *Valbert v. Pass*, 866 F.2d 237, 241 (7th Cir.1989) ("This court has repeatedly explained that 'improper comments during closing argument rarely rise to the level of reversible error.'")).

However, counsel's comments during closing arguments about plaintiffs' counsel's strategy regarding the defendant officers presents a closer call. The court has carefully reviewed the transcript of the comment that plaintiffs' counsel "don't believe it themselves," including the context in which the statement was made. The court has also taken into account its own recollections of that comment, as well as the ensuing objection by the plaintiffs. At the time, the court understood defense counsel to be stating that plaintiffs' counsel did not believe their own clients' version of events, an understanding corroborated by the court's review of the transcript. Such a comment is wholly improper. *See Spicer v. Rossetti*, 150 F.3d 642, 644 (7th Cir. 1998) ("Just as counsel may not express his beliefs regarding the honesty of the opposing party's witnesses, . . . he may not express his belief regarding opposing counsel's opinions of honesty.

---

[1]Counsel herself came to recognize the issue when, after she started to reminisce about receiving text messages at 2:00 in the morning, stated: "Sorry. Sorry. Strike that. I move to strike myself." Trial Transcript at 1342.

These opinions have no place in a court of law, and defense counsel's conduct was grossly inappropriate.").

In *Spicer*, the Seventh Circuit acknowledged that improper comments during closing argument rarely warrant a new trial. *Id.* However, the court held that defense counsel's repeated comments that plaintiff's counsel did not believe the plaintiffs, coupled with the district court's failure to sustain multiple objections to the comments and its statements in jurors' presence that the comments were proper argument, warranted a new trial. *Id.*

Though the comment at issue here was similar to the comment in *Spicer*, that case is nevertheless distinguishable. First, defense counsel in this case made a single improper comment about plaintiffs' counsel, while in *Spicer* defense counsel made the comment multiple times. Second, this court immediately recognized the impropriety of the comment and sustained the plaintiffs' objection to it, while in *Spicer* the court repeatedly stated in the presence of jurors that the statement was proper and overruled the plaintiff's objection. These distinctions, combined with the court's instruction to jurors that counsel's statements are not evidence, convince the court that the improper comment did not influence the jury to such an extent as to warrant a new trial.

## CONCLUSION

The plaintiffs have identified what they contend are a number of irregularities that denied them a fair trial. However, the court has determined, in its discretion, that none of the purported irregularities, either alone or in the aggregate, substantially influenced the jury such that a new trial is required. Accordingly, for the reasons detailed above, the plaintiffs' motion for a new trial [20-1] is denied.

ENTER:

DATE: October 21, 2010

_____
Blanche M. Manning
United States District Judge